# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of: City of Philadelphia   :
                                  :
From a Decision of: Zoning Board of   :   No. 1078 C.D. 2023
Adjustment                               :
                                        :   Argued: June 3, 2025
Appeal of: City of Philadelphia          :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORABLE STACY WALLACE, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                 **FILED: July 8, 2025**

City of Philadelphia (City) appeals from the order entered by the Court of Common Pleas of Philadelphia County (Common Pleas) on August 21, 2023, which affirmed the decision entered by the Zoning Board of Adjustment (Board) on December 21, 2022. That decision granted a variance application filed by 2901 Grant Properties LLC (Grant Properties). Upon review, we affirm in part and reverse in part.

## I. BACKGROUND[1]

This matter concerns a 375,000-square-foot property located at 2901 Grant Avenue in Philadelphia, Pennsylvania (Property). The Property is zoned I-2 medium industrial and currently hosts several self-storage facilities, which are

---

[1] We draw the bulk of this section's substance from the undated Findings of Fact and Conclusions of Law (Decision) that the Board issued in support of its December 21, 2022 decision. *See generally* Bd.'s Decision.

permitted by right in this zoning district, as well as a daycare center, which is allowed as a nonconforming use.

In 2020, Grant Properties filed an application with the City's Department of Licenses and Inspections (L&I), through which Grant Properties sought a zoning/use permit that would enable it to erect a sit-down restaurant building with an accessory drive-through on the Property, as well as to alter the Property's existing parking lots to create an additional 16 parking spaces. The restaurant building would be approximately 1,700 square feet in size and would offer employees from the Property's other businesses a dining option to which they could easily walk, in contrast to the other, more distant food service establishments in the area.

In July 2020, L&I denied the application for two reasons. First, the proposed use was not allowed in the I-2 district. Second, the drive-through's "stacking lanes"[2] were closer to the property line than the required minimum of 20 feet. In August 2020, Grant Properties appealed this denial to the Board. In doing so, it requested a use variance for the restaurant and a dimensional variance regarding the stacking lanes' location.

In December 2020, following a hearing, the Board unanimously approved the variances. However, shortly thereafter, the Board agreed to reconsider

---

[2] This term is not specifically defined in City's Zoning Code. *See generally* Zoning Code, Philadelphia County, Pa., *as amended* (2012). However, the Zoning Code does mandate stacking lanes as a design component for establishments that offer drive-through service. *See id.*, § 14-805(2). In the context of this Zoning Code provision, a "stacking lane" is a dedicated lane in which there is space for multiple vehicles to queue while awaiting drive-through service. *Id.*

2

its decision. Following a rather lengthy delay,[3] the Board held a second hearing to consider revised plans and ultimately voted to grant the requested variances.

Both the City and Councilman Brian O'Neill appealed the Board's decision to Common Pleas, which took no additional evidence. Upon review, in August 2023, Common Pleas issued two orders, one which affirmed the Board's decision and denied the City's appeal (First Order), and the other which quashed Councilman O'Neill's appeal for lack of standing. The City then appealed the First Order to our Court.

## II. ISSUES

The City's appellate arguments can be distilled into a single assertion, namely, that the Board erroneously determined that Grant Properties had established its entitlement to the requested, restaurant-related use variance.[4] *See* City's Br. at 4, 22-36.

---

[3] The Board granted Councilman Brian O'Neill's request for reconsideration, which Grant Properties challenged in Common Pleas. Eventually, Common Pleas denied the appeal in July 2022.

[4] We note that the City also maintains that the Board acted in an arbitrary or capricious manner by granting the restaurant-related use variance and had improperly granted the parking-related dimensional variance. *See* City's Br. at 4-5, 22-40. However, the City did not raise these issues when this matter was before Common Pleas. *See* City's Common Pleas Br. at 6-14; Common Pleas Hr'g Tr., 7/19/23, at 2-40; Common Pleas Hr'g Tr., 8/16/23, at 2-29. The Pennsylvania Rules of Appellate Procedure establish that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a). The City has therefore waived its ability to present those arguments before our Court and, thus, we can only consider whether the Board abused its discretion by granting the aforementioned use variance.

In addition, there are arguments in the brief that are presented on behalf of Councilman O'Neill, which challenge Common Pleas' quashal of his appeal. *See* City's Br. at 40-48. Councilman O'Neill initially appealed Common Pleas' quashal of his appeal to our Court but then filed an Application to Withdraw and Discontinue Appeal, which we granted on June 20, 2024. *See* Cmwlth. Ct. Order, 6/20/24, at 1. Accordingly, we need not address the merits of those arguments, as they have been rendered moot as a result of Councilman O'Neill's discontinuance of his appeal.

**III. DISCUSSION**[5]

We conclude that the Board erred, because the record evidence fails to support the Board's conclusion that the Property is beset by unnecessary hardship. It is well-settled that "variance[s] should be granted sparingly and only under exceptional circumstances." *Rittenhouse Row v. Aspite*, 917 A.2d 880, 884-85 (Pa. Cmwlth. 2006). To that end, "[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious[,] and compelling." *Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 530 (Pa. Cmwlth. 2018). Pursuant to Section 14-303(8)(e)(.1) of the Zoning Code, the Board can grant a variance only in the event it concludes that three prerequisites are satisfied: (1) a hardship exists that is unique to the property; (2) the granting of the requested variance would not adversely affect the public health, safety, or general welfare; and (3) the requested variance is the minimum necessary that will afford relief with the least possible modification from the terms of the Zoning Code. *Marshall v. City of Phila.*, 97 A.3d 323, 329 (Pa. 2014).[6]

---

[5] Where, as here, a court of common pleas disposes of a statutory zoning appeal without considering any additional evidence, our standard of review "is limited to determining whether the zoning board committed an abuse of discretion or an error of law in rendering its decision." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014). A zoning board abuses its discretion when it issues factual findings that are not supported by substantial evidence. *DiMattio v. Millcreek Twp. Zoning Hr'g Bd.*, 147 A.3d 969, 974 (Pa. Cmwlth. 2016). Substantial evidence constitutes "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Borough of Fleetwood v. Zoning Hr'g Bd. of Borough of Fleetwood*, 649 A.2d 651, 653 (Pa. 1994).

[6] Section 14-303(8)(e)(.1) of the Zoning Code reads as follows:

> The . . . Board shall grant a variance only if it finds each of the following criteria are satisfied:
>> (.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in [Zoning Code] § 14-

4

With regard to use variances in particular, they "involve[] a request to use property in a manner that is wholly outside zoning regulations." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014).[7]

---

303(8)(e)(.2) (Use Variances) . . . in the case of use variances, or the criteria set forth in [Zoning Code] § 14-303(8)(e)(.3) (Dimensional Variances) . . . in the case of dimensional variances, have been satisfied;

(.b) The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue;

(.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;

(.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

(.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

(.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g) The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

Zoning Code § 14-303(8)(e)(.1).

[7] The Zoning Code mandates that the Board, when faced with applicant's request for a use variance,

must make all of the following findings [in order to justify granting the desired relief]:

5

In this instance, the Board unmistakably abused its discretion when it determined that Grant Properties had shown that the Property's unique physical characteristics created an unnecessary hardship that prevented it from being used in accordance with the Zoning Code's strictures. As we have explained in the past, "in order to establish unnecessary hardship required for the grant of a use variance, an applicant must demonstrate that the property cannot be used for a permitted purpose, that the cost to conform the property for a permitted purpose is prohibitive, or that the property has no value for a permitted purpose." *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 151 (Pa. Cmwlth. 2011).

Here, the Board concluded that unnecessary hardship existed for two reasons. First, "the portion of the property where [Grant Properties] has proposed the . . . restaurant is ill-suited for traditional industrial use based on its diminutive

_____

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;
(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;
(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and
(.d) That the hardship cannot be cured by the grant of a dimensional variance.

Zoning Code § 14-303(8)(e)(.2).

size and location by a stormwater easement and a creek." Bd.'s Decision, Conclusions of Law (C.L.), ¶12. Second, "the proposed [restaurant] would complement the existing uses on the [P]roperty, particularly given the lack of available food service on or around the [P]roperty, as well as preserve the [P]roperty's economic viability and its largely industrial character." *Id.* These conclusions ignore the fact that the Property is the *situs* for several self-storage facilities, which, as we have already noted, are authorized by-right uses for I-2 medium industrial-zoned parcels like the Property. The Property is thus *already* being used in compliance with, and has value for a purpose permitted by, the Zoning Code.

Moreover, Grant Properties' "mere desire to maximize the potential use of the [P]roperty by including a . . . restaurant is not sufficient to establish unnecessary hardship." *Singer*, 29 A.3d at 151. The fact that "a person wants to do more with his or her land in addition to [its current] use [does not prove that an] unnecessary hardship [exists that is] unique to that piece of land." *Soc'y Created to Reduce Urb. Blight v. Zoning Bd. of Adjustment of City of Phila.*, 771 A.2d 874, 878 (Pa. Cmwlth. 2001).[8] Indeed, "nothing guarantees a property owner that every square foot of his property can be occupied." *Id.* at 878 n.4. The Board thus abused its discretion by determining that the requisite unnecessary hardship existed, because that determination is not supported by substantial evidence.

---

[8] By the Board's own telling, Grant Properties "is currently expanding the self-storage industrial use at the property [and] is seeking to develop a small portion of the property for food service to support the existing businesses." Bd.'s Decision, C.L., ¶11.

7

## IV. CONCLUSION

In accordance with the foregoing analysis, we affirm the First Order in part, with regard to the parking-related dimensional variance, and reverse the First Order in part, as to the restaurant-related use variance.[9]

**LORI A. DUMAS, Judge**

---

[9] Due to our disposition of this appeal, we need not address the remainder of the City's arguments.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of: City of Philadelphia  :
                                                :

From a Decision of: Zoning Board of  :   No. 1078 C.D. 2023
Adjustment                                :
                                                :

Appeal of: City of Philadelphia     :

## O R D E R

AND NOW, this 8th day of July, 2025, it is hereby ORDERED that the Court of Common Pleas of Philadelphia County's (Common Pleas) August 21, 2023 order is:

1. AFFIRMED IN PART, to the extent that Common Pleas' order affirmed the Zoning Board of Adjustment's (Board) December 21, 2022 decision that granted Appellee 2901 Grant Properties LLC's (Grant Properties) application for a parking-related dimensional variance; and

2. REVERSED IN PART, to the extent that Common Pleas' order affirmed the Board's December 21, 2022 decision that granted Grant Properties' application for a restaurant-related use variance.

**LORI A. DUMAS, Judge**